[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. The Dissolution of the Marriage
It is found that all of the allegations of plaintiff's complaint have been proven, and that the marriage has broken down irretrievably. For those reasons the marriage of the parties is ordered dissolved.
II. The Exclusion of Certain Property from the Marital Estate
In this matter both parties contend that certain properties should not be considered part of the marital estate because they were either inherited or owned prior to the marriage. The claims of both parties are hereinafter considered.
A. Plaintiff's Claims
Plaintiff testified that her Toyota and her flute, each valued at $1,500, were acquired by her before the marriage, as were both of her I.R.A.s. She further stated that her HOOSAC bank accounts, valued at $10,451, were inherited from her parents at a time not noted by the court. On this issue the court's notes indicate that defendant stated "I make no claim to any of her premarital property." Inasmuch as all items listed on plaintiff's affidavit except her computer (which the court considers a tool of her employment) are thus excluded, it is found that plaintiff has no marital estate for distribution purposes.
B. Defendant's Claims
Defendant's estate is somewhat more complicated and falls into different categories, each of which will be discussed separately.
1. His Real Estate
Defendant owns two parcels of real estate in Vermont, each of which he CT Page 660 acquired before his marriage to plaintiff in 1994.
a. Turnbridge, Vermont Real Estate
This property consists of a house, barn and 101 acres of land. Defendant presently values this property at $200,000. It is encumbered by a mortgage with a present balance of $76,665 and has an equity of $123,335. Defendant purchased this property in 1988 for $160,000, using funds loaned from his mother.
Defendant claims the entire parcel should be excluded from the marital estate inasmuch as plaintiff made no contribution either in time or money to its increase in value. This is not quite the case. At the very least defendant expended marital time and effort in improving the property. In his words "I used marital funds in the Vermont properties."
It is the court's feeling that the increase in value of the property during the marital years should be shared by the parties in accordance with the statutory criteria of Sec. 46b-81 C.G.S. It cites Jackson v.Jackson, 17 Conn. App. 431, 435-6 (1989) for its reasoning. The property increased $40,000 in value in fourteen years, or $2,800 per year, and $22,800 during the eight year marriage. The court considers this increase part of the marital estate.
b. Norwich, Vermont Real Estate
This property is a condominium located in Norwich, Vermont but not far from nearby Dartmouth College where rental property is in demand. It was purchased by defendant in 1987 for $109,000 and he now values the property at $169,000. It is noted that the property has increased in value by $60,000 in fifteen years or at the annual rate of $4,000. The court finds that during the eight years of the marriage the condominium has increased $32,000 in value and this amount will be considered part of the marital estate.
2. Defendant's Two Life Insurance Policies
a. Berkshire Face Value $115,598 C.S.V. $11,850
Defendant testified that he acquired this policy in 1988 for 1989. The policy's cash surrender value after fourteen years was $11,850, an increase of $846 per year. For the eight years of marriage it increased $846 per year for a total increase of $6,768, which increase will be considered marital property. CT Page 661
b. Jefferson Pilot Face Value $10,000 C.S.V. $4,415
Defendant testified that this policy was acquired when he was born. As he is 46 years old, it is found that the value of the policy increased at the rate of $46 per year or a total of $768 during the eight years of the marriage. This amount ($768) is considered part of the marital estate.
3. Putnam Investments
This investment, which defendant acquired before his marriage, had a value of $47,853 at the close of 1994, the year the parties were married. It presently has a value of $70,754, not including $15,000 withdrawn by defendant from this account in August 2002 and used by him to pay his attorney and other personal bills. The court finds that for distribution purposes the $15,000 should be added back in making the present amount $85,764 and the increase in value of that account during the marriage $37,911. This amount will be considered part of the marital estate.
III. The Marital Estate of the Parties for Distribution Purposes
 Plaintiff (wife)
No marital estate 0
Defendant (husband)
 Turnbridge, Vermont house and outbuildings $ 22,800 Norwich, Vermont condominium 32,000 1995 Dodge 6,000 1958 M.G.A. 500 Tools, farm equipment (not considered) — Savings Accounts 1,786 Life Insurance Berkshire $6,768 Jefferson 768 $7,536 $ 7,536 Putnam Investments 37,911 Oil and gas royalty interest 9,000
TOTAL $117,533
IV. The Examination of the Evidence as it Relates to Sec. 46b-81c C.G.S.
A. General Background Information
CT Page 662
The plaintiff wife, who is 38 years of age and the defendant husband, who is 47, were married on June 25, 1994, eight years ago. They have no children.
Plaintiff is a graduate of Mt. Holyoke College with a B.A. degree, having majored in French. She later attended summer school at Middlebury College. With regard to her present employment, she describes herself as a free lance editor. In her words "Right now I do editing. I found I enjoyed publishing." In addition she occasionally teaches part-time in a community school and gives infrequent flute lessons. Her current financial affidavit reflects a gross weekly income of $440 with a weekly net after the usual deductions of $274.
Defendant graduated from Parma Heights High School in Ohio in 1973, from the University of Arizona in 1977, from Mass. Institute of Technology in 1984 with a Ph.D. degree in geophysics, and from the University of Alabama Medical School in 1996 where he obtained an MD degree. In 1996-1997 he served a one year internship at St. Francis Medical Center in Pittsburgh, Pennsylvania followed by a one year residency in radiology at the UCONN Medical Center in 1997-98. He thereafter served a residency in radiology at Hartford Hospital from 1992 until 2000 followed by a year's study of molecular medicine at Harvard Medical School during 2001-2002. He failed his oral boards in radiology in June, 2002 and has one more year in which to pass his national radiology exams. He described his present employment position as follows: "Right now I'm unemployed. I live now on my rental property together with my oil and gas income." Defendant's financial affidavit indicates that he presently has a total net weekly income of $216.
 B. A Brief History of the Marriage Including an Examination of Responsibility for its Breakdown
Plaintiff testified that the parties met in New Hampshire in 1992 where defendant was a geo-physicist. They dated for two years, she proposed, he accepted and they were married less than a year later. Thereafter defendant attended medical school in Birmingham, Alabama. Prior to the move plaintiff had been working part-time in Dartmouth College as well as at a publishing house in Turnbridge, Vermont. The first signs of marital trouble appeared in Alabama. Plaintiff was a vegetarian who permitted no smoking or television in the home. Despite this structured environment defendant wanted to buy a home in Alabama but plaintiff did not. On the subject of raising a family plaintiff was less than enthusiastic. In her words "I felt I was getting little attention from him and that children might receive the same attention. I felt children should be a shared experience. He thought it was a feminist thing." CT Page 663
When the parties moved to Hartford some effort was made to purchase a house, plaintiff spending much time with a realtor, but in the end nothing resulted from her efforts. The parties separated in June, 2002 shortly after the defendant learned he had failed his radiology board examination.
Plaintiff's view on responsibility for the breakdown of the marriage is described in her own words. "He was not a generous person. We had to search for the lowest price constantly. We couldn't go on vacations. We stayed in cheap places. When he told me he was talking about his future with women at work, I told him he should be talking about those things with me. He complained throughout that I wasn't a cook, interested in making a home or having a child. This criticism made me feel small. take no responsibility for the poor communication between us." Plaintiff mentioned her suspicions concerning defendant's communications with another woman on the Internet, but there was little of substance to support this.
Defendant's opinion on the subject of fault was brief. In his words "It was hard for me to allocate time for her in Pittsburgh and West Hartford. This was the reason for the marital breakdown. She abandoned me. I tried to encourage her to develop her own interests. I don't think she was keen on moving to Boston. I think if I had passed my boards everything would be fine, we'd be together."
It is noted that there is absolutely no evidence of physical or mental abuse, excessive use of alcohol or infidelity on the part of either plaintiff or defendant. This court allocates responsibility for the breakdown of the marriage to neither party, feeling that the marriage was ill starred from the very beginning.
C. Health
 Plaintiff
Plaintiff testified that she presently has difficulty in sleeping and that she takes medication for her insomnia. She consulted a psychiatrist while in Connecticut to determine whether her problems in sleeping was caused by depression and was assured otherwise. She treated with a therapist for four years. Plaintiff has also suffered from migraine headaches over the years.
Defendant
CT Page 664
Defendant appears to be in reasonably good health with no stated medical ailments.
D. Other Factors
Defendant's opportunity for the future acquisition of capital assets and income exceed those of plaintiff. His liabilities substantially exceed those of plaintiff. The parties contributed equally in the acquisition, preservation or appreciation in value of their respective estates such as they are.
E. Conclusion
Having considered all of the factors set forth in Sec. 46b-81c C.G.S. and having given particular weight to such predominant factors as the comparative opportunities of the parties for the future acquisition of capital assets and income as well as the health of the plaintiff, it is ordered that the marital estate of the parties be divided as follows:
Plaintiff 55 percent in value
Defendant 45 percent in value
V. The Distribution of the Marital Estate in Accordance With the Findings made in Article IV supra
 Total Marital Estate $117,533 Plaintiff's Share (55%) 64,643 Defendant's Share (45%) 52,890
 Plaintiff Shall Take and Have
$ 64,643 $ 64,643
Defendant Shall Take and Have
 Turnbridge, Vermont house and outbuildings $ 22,800 Norwich, Vermont condominium 32,000 1995 Dodge 6,000 1958 M.G.A. 500 Tools, farm equipment — Savings Accounts 1,786 Berkshire Life Insurance Policy C.S.V. 6,768 Jefferson Life Insurance Policy C.S.V. 768 Putnam Investments 37,911 CT Page 665 Oil and gas royalty interest 9,000
TOTAL $117,533 Less Amount Due Plaintiff - 64,643
Net Amount Due Defendant $ 52,890
VI. Supplemental Orders Relating to the Distribution of the Marital Estate
A. Said sum of $64,643 shall be paid by defendant to plaintiff within 45 days from date hereof.
B. Both parties shall execute all documents necessary to carry out the orders of this court.
VII. Orders Concerning Alimony
A. Having considered all of the evidence as it relates to Sec. 46b-82
C.G.S., in particular the relatively short duration of the marriage, plaintiff's health, as well as defendant's prospects for much greater income in the near future, it is ordered that defendant pay to plaintiff as alimony the sum of $1 per year for a period of five years.
This order is non-modifiable as to term only but shall sooner terminate upon the remarriage of the plaintiff, the death of either party, or plaintiff's cohabitation with an unrelated male within the meaning and intent of Sec. 46b-86 (b) C.G.S.
B. The parties shall exchange federal income tax returns annually, commencing April 15, 2003, during such time as defendant shall be required to pay alimony to the plaintiff.
C. Defendant shall provide plaintiff written notice within one week of any change in his employment status and/or income.
D. Defendant shall continue to maintain his present Berkshire Life Insurance policy having a face value of $115,598 with plaintiff as irrevocable beneficiary during such time as defendant shall be required to pay alimony to the plaintiff.
E. In making the above orders the court is aware that at the present time plaintiff's weekly income, while modest, exceeds that of defendant, but it is also mindful that defendant's income may increase dramatically in the event of his success in passing the radiology examination or alternatively while engaging in the general private practice of medicine. CT Page 666
VIII. Other Orders
A. Counsel Fees
Because of the previous orders issued by the court, no award of counsel fees is made to either party.
B. Liabilities
Each of the parties shall be solely responsible for all debts listed on his or her financial affidavit and shall hold the other party harmless in that regard.
BY THE COURT
 John D. Brennan Judge Trial Referee
CT Page 667